

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
350 Fifth Avenue, Suite 5508
New York, New York 10118
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MERUELO CAPITAL PARTNERS 2, LLC,

    Plaintiff,

vs.

VISHAL BHUTANI & PAUL EIBLELER,

    Defendants.
-------------------------------------------------------------X

CASE No.:

COMPLAINT FOR VIOLATIONS OF CALIFORNIA AND WASHINGTON SECURITIES LAWS

JURY TRIAL DEMANDED

## NATURE OF THE ACTION

1.    This is an action by plaintiff Meruelo Capital Partners 2, LLC against defendants Vishal Bhutani and Paul Eibleler for violations of California and Washington state securities laws in connection with plaintiff's purchase of $2.5 million worth of Series D Convertible Preferred Stock and Common Stock Warrants (the "Securities") from defendant Diji Corp., formerly known as Dwango North America Corp. (referred to herein as "Dwango" or the "Company").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) because plaintiff and the defendants are citizens of different states, and the amount in controversy exceeds $75,000, excluding interest and costs.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) and §1391 (a)(3), because defendants reside in this District and are subject to personal jurisdiction in this District.

## PARTIES

4. Plaintiff Meruelo Capital Partners, LLC is a California limited liability company with its principal office located at 9550 Firestone Blvd., Suite 105, Downey California.

5. Defendant Paul Eibleler ("Eibleler"), at all relevant times herein, was a Director and control person of Dwango. Because of his position with the Company during the relevant period, Defendant Eibleler had access to the material, adverse, non-public information about Dwango's internal control structure, finances, internal corporate documents (including the Company's operating plans, budgets and forecasts, and reports of actual operations compared thereto). In addition, Eibleler communicated with other corporate officers and employees; attended meetings of the management, the Board of Directors, and committees thereof; read reports and other information provided to him in connection therewith; and directly communicated with securities analysts regarding Dwango's business and financial condition. Eibleler is a resident of New York.

6. Defendant Vishal Bhutani ("Bhutani"), at all relevant times herein, was a Director and control person of Dwango. Because of his position with the Company during the relevant period, Defendant Bhutani had access to the material, adverse, non-public information about Dwango's internal control structure, finances, internal corporate documents (including the

Company's operating plans, budgets and forecasts, and reports of actual operations compared thereto). In addition, Bhutani communicated with other corporate officers and employees; attended meetings of the management, the Board of Directors, and committees thereof; read reports and other information provided to him in connection therewith; and directly communicated with securities analysts regarding Dwango's business and financial condition. Bhutani is a resident of New York.

**Relevant Nonparties**

7. Diji Corp. is a Texas corporation formerly known as Dwango North America Corp. At all relevant times, Dwango's principal offices were located in Seattle, Washington. During the relevant time period, Dwango's common stock was traded on the OTC Bulletin Board system. The Company files annual, quarterly and other reports with the SEC pursuant to the Exchange Act. Dwango claims to be a global provider of cross-platform merchant and consumer infrastructure services on wireless, broadband, and narrowband platforms. The Company develops and distributes applications for users of next generation wireless devices.

8. At all relevant times, Rick J. Hennessey was Chief Executive Officer and a director of the Company. Because of his position with the Company during the relevant period, Defendant Hennessey had access to the material, adverse, non-public information about Dwango's internal control structure, finances, internal corporate documents (including the Company's operating plans, budgets and forecasts, and reports of actual operations compared thereto). In addition, Hennessey communicated with other corporate officers and employees; attended meetings of the management, the Board of Directors, and committees thereof; read reports and other information provided to him in connection therewith; and directly communicated with securities analysts regarding Dwango's business and financial condition.

3

Upon information and belief, Hennessey is, and was at all relevant times, a citizen of the State of Washington.

9.   At all relevant times, Alexander U. Conrad was President, Chief Operating Officer and a director of the Company. Because of his position with the Company during the relevant period, Conrad had access to the material, adverse, non-public information about Dwango's internal control structure, finances, internal corporate documents (including the Company's operating plans, budgets and forecasts, and reports of actual operations compared thereto). In addition, Conrad communicated with other corporate officers and employees, attended meetings of the Board of Directors and committees thereof, and read reports and other information provided to him in connection therewith regarding Dwango's business and financial condition. Upon information and belief, Conrad is, and was at all relevant times, a citizen of the State of Washington.

10.   At all relevant times, J. Paul Quinn was the Chief Financial Officer and treasurer of the Company. Because of his position with the Company during the relevant period, Quinn had access to the material, adverse, non-public information about Dwango's internal control structure, finances, internal corporate documents (including the Company's operating plans, budgets and forecasts, and reports of actual operations compared thereto). In addition, Quinn communicated with other corporate officers and employees, attended meetings of the Board of Directors and committees thereof, and read reports and other information provided to him in connection therewith regarding Dwango's business and financial condition. Upon information and belief, Quinn is, and was at all relevant times, a citizen of the State of Washington.

11.   At all relevant times herein, defendant Vishal Bhutani and Paul Eibleler served as directors and were control persons of Dwango.

12.  Bhutani and Eibeler are hereinafter referred to as the "Individual Defendants."

13.  Because of their positions as Dwango directors, Bhutani and Eibeler had reason to know of the wrongful conduct of Hennessey, Conrad, Quinn and Dwango alleged herein.

14.  Wedbush Morgan Securities Inc. ("Wedbush") is a licensed broker-dealer of securities that maintains its principal place of business in Los Angeles, California. Dwango contracted with Wedbush to act as its agent within the State of California for the purpose of offering and selling the Securities to residents of the State of California, including the Plaintiffs. At all relevant times, Wedbush acted primarily through its employees Mark Salter and Steve Horkay, who acted within the course and scope of their authority as Wedbush employees. Mark Salter was a managing director of Wedbush. As a managing director, Salter had authority to act on behalf of Wedbush and bind Wedbush by his actions. Steve Horkay was a Vice- President of Wedbush. As a Vice-President, Horkay had authority to act on behalf of Wedbush and bind Wedbush by his actions. Upon information and belief, Horkay and Salter were NASD registered stockbrokers employed by Wedbush and responsible for carrying out the Dwango securities transaction.

15.  Wedbush served as the placement agent and broker of a private placement of Dwango Series D Convertible Preferred Stock and Warrants completed on or about February 2, 2005.

**ONGOING LITIGATION IN CALIFORNIA STATE COURT**

16.  On May 17, 2006, plaintiff Meruelo Capital Partners 2, LLC commenced a civil action in the Superior Court of the State of California in the County of Los Angeles against Dwango, Rick J. Hennessy, Alexander U. Conrad, Derrick Ashcroft, Vishal Bhutani, Paul Eibleler, and Wedbush for violations of the California Corporations Code and the Washington

State securities laws, in connection with the Securities Offering described herein (the "California Action").

17. Bhutani and Eibleler moved to quash service of the summons and complaint in the California Action for lack of personal jurisdiction. On August 14, 2007, the California court entered an Order granting Bhutani and Eibleler's motion to quash service of the summons and complaint.

18. The legal and factual claims alleged against Bhutani and Eibleler in the California Action are nearly identical in sum and substance to the legal and factual claims asserted herein.

19. Thus, during the pendency of the California Action against Bhutani and Eibleler, the statute of limitations, as to each of the claims asserted herein, was tolled.

## THE SECURITIES OFFERING

20. In December 2004, Dwango and Wedbush jointly drafted and issued a private placement memorandum (the "PPM") for the offering of $15 million of Series D Convertible Preferred Stock and Common Stock Purchase Warrants (collectively the "Securities") of Dwango.

21. In early January 2005, Alex Meruelo and Joseph Marchica, authorized agents of plaintiff, met with Mark Salter and Ed Wedbush of Wedbush at a lunch meeting to discuss a variety of business issues. At the meeting Salter mentioned that Wedbush was managing a private offering of securities for Dwango. Salter asked Marchica and Meruelo if plaintiff would be interested in investing in Dwango. Marchica and Meruelo suggested that Salter send them some information on the offering.

22. On or about January 20, 2005, Wedbush delivered to plaintiff a copy of the PPM. In addition, to assist in soliciting plaintiff's investment in the Securities, Wedbush provided to

plaintiff (a) a sixteen-page investor presentation on or about January 20, 2005, and (b) on or about January 28, 2005, a set of current and projected financial statements (with attachments) for Dwango for fiscal years ended December 31, 2004, and December 31, 2005. Upon information and belief, the financial statements and investor presentation were prepared by Dwango and reviewed for accuracy by Wedbush. The PPM, the financial statements, the investor presentation, a subscription agreement, and related documents are referred to collectively herein as the "Offering Documents." Defendants provided to plaintiff the Offering Documents in connection with their solicitation of plaintiff's purchase of the Securities.

23.    Acting as agent of plaintiff, Marchica and Alex Meruelo reviewed each of the Offering Documents.

24.    On or about January 28, 2005, Wedbush organized a telephone conference call to provide plaintiff additional information concerning the purchase of the Securities. On the call were defendants' representatives, including Rick Hennessey of Dwango and Mark Salter of Wedbush, and Joe Marchica and Alex Meruelo on behalf of plaintiff. During the telephone conference call, Wedbush and Dwango actively solicited plaintiff's purchase of the Securities through a series of material misrepresentations and omissions of material fact.

25.    Upon information and belief, Hennessey was located in Dwango's offices in Washington State at the time of the telephone conference call and Salter was in Wedbush's Los Angeles, California office during the call. Marchica and Meruelo were situated in California during the telephone conference call.

26.    During the call, Mr. Marchica asked defendants whether all of the revenue and income amounts for the Company set forth in the financial statements provided to plaintiff by defendants were still accurate as of that date. Mr. Hennessey confirmed that the Company was,

7

as of that date, still on track to meet the projected revenue and income amounts set forth in the financial statements, which defendants had previously represented to plaintiff in soliciting plaintiff's purchase of the Securities.

27. The preceding representation that the financial statements were accurate as of that date was knowingly false for several reasons.

28. The financial statements provided by defendants stated that Dwango would receive in the first quarter of 2005 a full quarter of revenue from Beliefnet and Playboy.

29. Dwango failed to launch Beliefnet until the end of the second quarter of 2005. Dwango did not launch Playboy until fourth quarter 2005. Upon information and belief, when Playboy finally launched, it was only in Canada, and not the U.S.A. – eliminating more than 90% of the expected revenue.

30. Thus, two material revenue streams -- representing 23% of projected first quarter revenue and 35% or more of planned fiscal 2005 revenue set forth in the financial statements -- that defendants represented already to have commenced as of the date of plaintiff's Securities purchase had not been initiated, and in material amounts, would never commence.

31. During the January 28, 2005 telephone conference call and in the Offering Documents, defendants Hennessy and Conrad represented to plaintiff that Dwango's Playboy product line would generate $130,171 in revenue in the first quarter of 2005 and $433,809 in revenue in the second quarter of 2005. Defendants specifically represented that Playboy would be a major driver of revenue for Dwango and represented that a similar Playboy product line was currently generating tremendous revenue for telephone carriers in Europe, and in particular, in Italy. The investor presentation also stated that Playboy had launched already in the first quarter of 2005. These statements were false because defendants knew for certain that as of the January

28, 2005 conference call, the Playboy product line had not and would not generate any revenue in the first quarter of 2005 and likely not in the second quarter of 2005, as a result of delays in persuading telephone carriers to distribute Playboy products because of issues surrounding age verification and the fact that Playboy was adult content.

32. Defendants represented to plaintiff that Dwango had developed relationships with all of the major telephone carriers for the distribution of its product line. The revenue projections provided by defendants were based on the assumption that Dwango's Rolling Stone product would be available through Verizon, the nation's largest carrier, in the first quarter of 2005. Defendants specifically touted Dwango's relationships with Verizon and the imminent launch of its Rolling Stone products on Verizon as a major revenue source. In fact, defendants were aware, but failed to disclose, that the rollout of the Rolling Stone product on Verizon would be delayed significantly, causing a material loss of expected revenue for the Company.

33. The financial statements provided by defendants to plaintiff and confirmed by defendant Hennessey as accurate as of January 28, 2005, stated that Dwango would earn revenue and income as follows:

|  | Q1 2005 | Q2 2005 | Q3 2005 | Q4 2005 | Full Year 2005 |
|---|---|---|---|---|---|
| Revenue | $ 1,624,982 | $ 2,830,916 | $ 4,314,327 | $6,843,329 | $ 15,613,555 |
| Cost of Sales | 932,221 | 1,539,743 | 2,277,110 | 3,500,741 | 8,249,814 |
| Operating Expenses | 2,696,628 | 3,067,997 | 3,212,714 | 3,366,182 | 12,343,521 |
| Operating Income | $(2,003,867) | $(1,776,824) | $(1,175,497) | $ (23,594) | $ (4,979,780) |
| Other Expenses | 814,129 | 824,017 | 830,977 | 834,351 | 3,303,474 |
| Total Expenses | 3,510,757 | 3,892,014 | 4,043,691 | 4,200,533 | 15,646,995 |
| Net Income |  |  |  | $ (857,945) | $ (8,283,254) |

                                     $(2,817,996)   $(2,600,841)   $(2,006,474)

EBITDA          $(1,878,612)   $(1,671,345)   $(1,083,937)   $   61,218   $ (4,572,677)

     34.      The financial statements also misrepresented that the gross margins for Dwango would be increasing each quarter as new products were rolled-out. In fact, in the first quarter conference call on May 17, 2005, defendants stated they expected gross margins to decrease as new products launched.

     35.      Based on the information in the Offering Documents, much of which proved later to be false and misleading, plaintiff purchased $2.5 million worth of the Securities directly from Dwango, through broker-dealer Wedbush, on February 1, 2005.

     36.      On or about March 1, 2005, Mr. Marchica visited Dwango's headquarters in Seattle, Washington. During this visit, defendant Hennessey specifically stated to Mr. Marchica that Dwango remained on track to meet the revenue and income amounts that defendants had set forth in the financial statements.

     37.      On May 17, 2005, Dwango announced its first quarter 2005 revenue and income performance. Dwango reported first quarter revenue of $1,060,000, which was $564,982 or 35% less than the revenue defendants represented to plaintiff when selling the Securities.

     38.      Following the announcement, the price of publicly traded Dwango common stock and the value of the Securities dropped substantially and continued to fall.

     39.      On August 15, 2005, Dwango announced its financial results for the second fiscal quarter of 2005. The Company reported second quarter 2005 revenue of $880,000, which was $1,950,916, or 69%, less than the amount of revenue that defendants represented to plaintiff

when selling the Securities. In addition, the net loss for the second quarter was $4.56 million, or more than twice the loss defendants represented to plaintiff when selling the Securities.

40. According to the August 15, 2005 press release, the BeliefNet product still had not launched as of May 2005, contrary to defendants' previous representations. In addition, according to the same press release as of August 15, 2005, the Playboy and Minifizz products had not yet launched. Minifizz was never launched and Playboy was not launched until sometime in the fourth quarter of 2005.

41. Defendants knew at the time of the sale of the Securities to plaintiff that the revenue and income projections provided to plaintiff were inaccurate and that the Company had no reasonable chance of achieving such results.

## FIRST CAUSE OF ACTION

### Against the Defendants for Violations of California Corporations Code § 25504

42. Plaintiff incorporates by reference and realleges the preceding paragraphs as though fully set forth herein.

43. This First Cause of Action is asserted against defendants Eibleler and Bhutani under California Corporations Code §25504.

**Predicate Violation of Cal. Corp. Code § 25401**

44. Dwango is liable under California Corporations Code §§ 25401 and 25501.

   a. Dwango, acting through its executive officers and employees, offered to sell and/or sold the Securities by means of untrue statements of material fact and through omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. Dwango misrepresented and/or

11

participated in the making of misrepresentations of material facts and omissions regarding the business and affairs of Dwango. Dwango made and/or participated in the making of untrue statements of material fact and/or the omission of facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading for the purpose of inducing the purchase of Dwango securities by plaintiff.

b. Dwango sold approximately $2.5 million worth of the Securities to plaintiff in the State of California. Dwango sold the shares by means of numerous oral and written communications, which included untrue statements of material facts and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading as more fully described above.

c. Plaintiff has suffered substantial damages because it paid an artificially inflated price for the Dwango shares. Plaintiff would not have purchased Dwango shares at the price it paid, or would not have purchased the Securities at all, if it had been aware that the price had been artificially and falsely inflated by the defendants' misleading statements and/or omissions. At the time of plaintiff's purchase of the Securities, the true and fair market value of said shares was substantially less than the market price paid by plaintiff.

    d. By reason of the foregoing, Dwango violated California Corporations Code §25401, thereby entitling plaintiff to recover damages under California Corporations Code §25501.

45. Eibleler and Bhutani were both directors and control persons of Dwango, and each is liable under §25504 as an officer, director and control person of Dwango to the extent as is Dwango for Dwango's aforesaid securities law violations under California Corporations Code § 25401.

46. As a direct and proximate result of Eibleler and Bhutani's wrongful conduct described above, plaintiff has suffered substantial damages in connection with its purchase of Dwango securities.

47. Plaintiff has brought this action within two years of discovery of the wrongful conduct alleged herein and within five years of the purchase of the Securities.

## SECOND CAUSE OF ACTION

48. Plaintiff incorporates by reference and realleges the preceding paragraphs as though fully set forth herein.

49. This Second Cause of Action is asserted against Bhutani and Eibleler under the Revised Code of Washington §21.20.010(1)-(3) and §21.20.430(3).

**Predicate Violation of Revised Code of Washington §§21.20.010(1)-(3) and §§21.20.430(1)**

50. Dwango is liable to plaintiff under the Revised Code of Washington §§21.20.010(1)-(3) and §§21.20.430(1).

    a. Dwango, acting through its executive officers and employees, offered to sell and/or sold Dwango securities by means of untrue statements of

13

material fact and through omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

b. Dwango misrepresented and/or participated in the making of misrepresentations of material facts and omissions regarding the business and affairs of Dwango. Dwango made and/or participated in the making of untrue statements of material fact and/or the omission of facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading for the purpose of inducing the purchase of Dwango securities by Plaintiff. Each of the statements referenced herein was made for the purpose of selling or offering to sell Dwango securities pursuant to the Merger Agreement and Acquisition Agreement.

c. Dwango sold $2.5 million worth of Dwango Securities to plaintiff in and from the State of Washington. The Offering Documents were drafted in part by Dwango in the State of Washington. Dwango, while located in the State of Washington, sold the Securities by means of numerous oral and written communications, which included untrue statements of material facts and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading as more fully described above. Dwango has engaged in a course of business that has operated as a fraud and deceit

14

      upon plaintiff as describe above. Dwango has employed a device, scheme and artifice to defraud plaintiff as described above.

   d. Plaintiff has suffered substantial damages because it paid an artificially inflated price for the Dwango shares. Plaintiff would not have purchased Dwango shares at the price it paid, or would not have purchased the Securities at all, if it had been aware that the price had been artificially and falsely inflated by the defendants' misleading statements and/or omissions.

   e. At the time of the purchase by plaintiff of Dwango Securities, the true and fair market value of said shares was substantially less than the market price paid by Plaintiff.

   f. By reason of the foregoing, Dwango has violated the Revised Code of Washington §§21.20.010(1)-(3) and is liable to plaintiff under §§21.20.430(1).

51. The Individual Defendants were all officers, directors and control persons of Dwango who materially aided in the sale of the Securities to plaintiff.

52. Under the Revised Code of Washington §21.20.430(3), each of the Individual Defendants is liable to the same extent as is Dwango for Dwango's violations under §21.20.010(1)-(3).

53. As a direct and proximate result of the Individual Defendants' wrongful conduct described above, plaintiff has suffered substantial damages in connection with its purchase of Dwango securities.

    **WHEREFORE**, plaintiff prays for relief and judgment, as follows:

(a) On the first and second causes of action, against each defendant jointly and severally in favor of the plaintiff for rescission, and damages in the amount of $2,500,000, plus prejudgment interest from the date of purchase of the Securities;

(b) Against each defendant and in favor of the plaintiff for pre-judgment and post judgment interest, in an amount determined to have been sustained by plaintiff; and

(c) Awarding plaintiff costs of this suit, including reasonable attorneys' and experts' fees and other costs and disbursements; and such and other further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

Dated: January 22, 2008

THE ROSEN LAW FIRM, P.A.

Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
350 Fifth Avenue, Suite 5508
New York, NY 10118
Phone: (212) 686-1060
Fax: (212) 202-3827

and

Kenneth J. Catanzarite
Jim Travis Tice
CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Telephone: (714) 520-5544
Facsimile: (714) 529-0680

Attorneys for Plaintiff